I'm going to limit my argument to two issues. I first want to address the erroneous submission of the magazines and then I want to address the supervised release condition related to the forced waiver of confidentiality as mental health treatment records. With respect to the magazines, this material is just so overwhelmingly prejudicial. Sorry, could you address the supervised release? I'm interested in the supervised release. In this case, one of the conditions of supervised release was that he seek mental health treatment. Along with that was the condition that he shall grant a limited waiver as right of confidentiality in any records of mental health treatment imposed as a consequence of this judgment to allow the treatment provider to provide information to the probation officer. Which effectively undercuts the entire efficacy of the mental health treatment condition. That is, it is beyond question that confidentiality is the most critical factor in efficient and effective mental health treatment. And to enforce a blanket waiver without any consideration or any countervailing reasons is just plain error. Counsel, the court below did not have the benefit of the recent antelope decision of this court that set out some holdings in regard to a condition of this kind. In your view, would it be preferable, assuming that any of your arguments we find to be well taken, would you like this court to deal with them or do you believe that the district court should have the first opportunity to examine the effects of antelope? Well, either course would obviously be preferable to maintaining these conditions. Though I believe this court is well situated to assessing the factors given the factual record in this case, which there were very few facts before the district court anyway. There are very few facts to consider on this matter. This is a condition that we impose on all these cases basically. And it seems to be a concomitant condition with mental health treatment. It is the sister requirement that we disclose these to probation officers for whatever reason. No reason specifically stated. Well, how do we know whether they're on the road to rehabilitation? I mean, if it means assuming you can rehabilitate, and I think there's evidence certainly that you can, and the special condition is imposed, which you're not saying it's an unreasonable special condition that a person participate in mental health counseling under these circumstances, how do you know whether it's effective? I mean, without some type of agreement to waive it. I can understand an argument that those communications can't be used for indictment in a crime or evidence of other crimes and so forth because they're being forced to perhaps arguably participate in the program. But how would you go about it? Well, there certainly would be much less objection to a condition that allows the mental health treatment provider to provide a status report on the treatment or provide an opinion on that. But this condition was certainly not limited to that. It, by its terms, allows the mental health treatment provider to disclose every single communication in that session, mental health treatment records, which would certainly include session notes. There's certainly no purpose for that. Now, if the district court or the probation officer wants to inquire the mental health treatment provider, how's the treatment, how are the sessions going, how's our client doing, then certainly that's not. There was no objection below, though, to any of these conditions, correct? That's correct, Your Honor. All right. And so we review them for plain error? That's correct. But under any standard, plain error, this condition certainly meets that standard. Well, but when you don't object, you don't give the district court an opportunity to articulate the reasons why, under the circumstances of that particular case, why it's necessary. So then you have the burden of showing that substantial rights are affected by those conditions, correct? That's correct, Your Honor. But I would just submit there would be no justification that would allow for the complete disclosure of mental health treatment records. I want to ask you a couple of questions about the magazines as well. Now, did your client ever offer to stipulate that the charged images were of actual children under the age of 18 and that they had traveled in either interstate or foreign commerce? No, he did not. All right. So aren't these things that the prosecution had to prove? That's correct. We don't dispute that. But it seems to me what you're saying is you want them to prove the way that you want them to prove them as opposed to but you're not willing to stipulate. If you've been willing to stipulate, that makes the decision, you know, much easier in assessing the prejudice prong because they clearly, they have to prove those elements. They have to prove those elements. And would you concede that those magazines contain evidence that go directly to proving those elements? As a whole, the magazines were probative on those elements. But we also have to prove one's guilt by admissible and evidence that doesn't unnecessarily prejudice. But she took, the district court judge, took extraordinary precautions, didn't she? I mean, there were all sorts of limiting instructions. She put the photographs in black and white. She did everything. Not everything, Your Honor. Other than exclude them. What else would you have her do? The point being here that the evidentiary value, the full evidentiary value of those magazines from the government standpoint could have been fully realized by mere testimony, mere words as to what they contain. That is, the FBI agent can say, I reviewed these archives. Right. I found these magazines. They match the images. But that's like a stipulation. That's what Judge Callahan is asking. It's like a stipulation. In other words, if there wasn't going to be, if there wasn't going to be an issue as to whether or not those elements have been proven, if that wasn't going to be an issue and you say it might have been an issue because you were unwilling to concede in the district court, fine, then I'm not quite sure that you can come back and say, well, but I'd like to cut down on the efficacy of the evidence to prove our elements of the offense. I would like to reduce it by 50 percent because I would just like them to take an agent's word. You can imagine what would be said in the jury room. Why didn't we see it? Why didn't we? We could form a judgment as to whether or not it's the same child. I mean, you know, hindsight's perfect. But what you're saying, was that suggested, by the way? If I go back and look at the record, was it suggested just to have the testimony? No. The defense counsel urged a complete ban, but the efficacy could have been fully realized by that. There was no additional evidentiary value, legitimate evidentiary value realized by placing this material before the jury. Well, except you have to believe that the officer, you have to believe it's the same person. It's like you have to believe my identification, whereas if you could look at it, because your client had certain, well, under PT or whatever, there were images under there. And so these exhibits, they could look at them and say, is that the same child? And my understanding is also some of them had foreign language written on it, which would tend to support that it went in foreign commerce. One could describe that there was foreign language, that the prosecutor defined all that in closing argument, describing every relevant bit of that evidence through these words. I urge this Court, and though as distasteful as it may be, to take a look at those exhibits as they were reduced. Well, they're here today, I guess. That's my understanding, that they're here today. But one need only look at them to understand the argument I'm making and how it was incumbent upon the Court. Well, how bad were the photos on your client's computer? Some of those images were smaller than those same images, but in context. The context is totally different. If you have seven images found on a CD, that's a little bit different consideration than having these printed in the context of these magazines with showing that these were suggesting that these children were having sex and enjoying it. It's just ages different. There's just no comparison, Your Honor. But the judge said these weren't, the defendant didn't possess these magazines and said it's being admitted to show, you know, what elements, right? A couple things. The judge herself was told during the hearing on this that he didn't possess them, and then later was offered an assumption that he did possess them. Of course, that was a mistake that she made. But the point being that the jury could well have made the same mistake, and she didn't instruct him that he didn't possess them. She instructed that he wasn't charged with possessing them, which could suggest that he did possess them. Well, there was obviously testimony that he didn't possess them, the point being that there was likelihood of confusion here. When they testified, the agent said where they got them from and that it wasn't in the defendant's possession, correct? That's correct. But like I said, the judge knew that as well and sort of forgot that and thought it was in his possession. Thank you, counsel. We'll hear from Mr. Wolf. Your Honors, I'd like to make one point that's in the record but not articulated in our papers about the magazines. I should say first that the exhibits that the defendant is charged with possessing are here if the court wishes to look at them, and the three exhibits, 1920 and 21, which were admitted, are also here. The court gave the original exhibits into the custody of the government after the trial. I can't tell from the record that we got, did the jury actually look at the exhibits? I don't know that, but they were taken into the jury room with all the exhibits. They were not published during the trial. One way to evaluate defendant's claim about how dreadful the exhibits were without actually looking at them is what I'd like to crystallize for the court now. Exhibit 19 is a magazine of 32 pages. 26 of the pages were redacted. Six of them were not. The six included images and text. Exhibit 20 contained 51 pages. Every image was redacted from it except the cover and two other images so that of the 51 pages, only three did not suffer redaction. Exhibit 21 contained 33 pages. It was redacted so that it retained the cover, two images on page one and two images on page two, and the back cover. Of those four pages, two of the images aren't even child pornography. They were allowed in. They were left in because one of them is a picture that contains the facial close-up of the little girl that was one of the subjects of the child pornography. It's just a close-up of her face. It's not even chargeable. The cover of the image is not sexually explicit conduct and isn't chargeable either. They were admitted only because the court found that they were the most relevant on the three questions that Your Honor pointed out, the three elements that the government had, and they were the least prejudicial. Okay. If you hadn't been able to put in any of the magazines, if the court had denied that, what evidence would you have been able to present on the elements that you were required to prove? On three of the images, the evidence wasn't from the magazines anyway. It was from Constable Sharon Gerling, the British officer, who could say that she had interviewed the victims of child abuse and their abuser, and that she recognized three of the images as having been taken by Gary Salt. She knew the apartment where they had been taken in Great Britain. She knew that the children were minors at the time. Indeed, they were still minors when the trial took place. On the other four images, without the magazines, we would have been left with the jury inferring from the four charged images themselves, and if it had occurred to me and if the court had allowed it, we might have had someone else opining that, in my opinion, these children are under 18. What about the interstate commerce? How would you prove that? Without the magazines, I don't see how it could have been proved. The charged images contain no text at all. The magazines contain a great deal of text. Each of them contains foreign languages. One of them spells the word January ending in an I rather than a Y. One of them has an address. If you want to place an ad in the magazine, the address is in Holland. I think the interstate commerce element would have been in a bad way without the magazines. Was there any discussion of stipulation? There was, but Mr. Powers wasn't willing to do it. The government was eager to stipulate primarily because Constable Gerling was obliged to come from England to testify for about 15 minutes, and we would have been grateful on her account to avoid that. I spoke to counsel for Mr. Powers, and he told me that Mr. Powers wasn't willing to stipulate anything. Is that in the record? No, Your Honor, I don't believe that it is. Before we run out of time, I would appreciate your moving to the question of the conditions of treatment and what distinctions you draw, if any, between this situation and the Antelope case. Your Honor, I think that Antelope is useful to the government on two of the conditions. Yes. On the waiver, I think that it's plain as day that trying to violate Mr. Powers when you ask him, tell us about the other children you've molested, and he says, gee, I don't know if I want to do that, is a different kettle of fish from simply saying that whatever the results of the treatment are allowed to be communicated in confidence to the probation officer whose consideration of it is itself by statute confidential. I think that a defendant, if he were in an Antelope position, would have a great deal to complain about. But on these facts, I don't believe that he does, particularly since the probation officer explained in the letter to the court why the probation office believed that the condition, the waiver, was important to both the treatment and to the protection of the public. And Mr. Powers didn't object below. Given that, I don't see how it can be said, given the facts here, that plain error took place. Unless Your Honors have other questions, I'd submit on where it's standing now. Thank you. Thank you. I believe your time expired as well, so the case just argued is submitted. Before taking a short break, I will mention that the next case, Robles v. Adams, has been submitted on the briefs. And with that, we'll take a short recess and we'll return in seven minutes or so.
judges: Graber, Callahan, Breyer